IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFRED JIAU,<br><br>          Plaintiff,<br><br>  vs.<br><br>KAIRE POOLE; RANDY TEWS,<br><br>          Defendant.             / | No. C 13-0248 WHA (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiff, a former federal prisoner, filed this pro se civil rights case against Dr. Kaire Poole, the Drug Abuse Program Coordinator, and Warden Randy Tews at the federal prison in Dublin, California, where plaintiff was housed. Plaintiff alleges that these defendants violated her constitutional rights by expelling her from a drug treatment program. She also alleges that she had difficulty accessing the courts and that officials tampered with her mail. The case was dismissed without prejudice to refiling in a federal habeas petition. On appeal, the United States Court of Appeals of the Ninth Circuit reversed and remanded that decision on the grounds that the claims could be brought in a civil rights action. In the same appeal, the United States Court of Appeals affirmed the dismissal on exhaustion grounds of plaintiff's federal habeas petition, *Jiau v. Tews*, No. C. 12-4193 SI (PR). That petition — filed five months before the complaint in this case — raised the same claims plaintiff raises here challenging her expulsion from the drug treatment program.

Following the mandate from the Court of Appeals, the complaint was ordered served on defendants Tews and Poole. They were served and have filed a motion for summary judgment

on exhaustion and other grounds. Plaintiff has filed an opposition, and defendants have filed a reply brief.

**STATEMENT**

On September 21, 2011, Jiau was sentenced in the United States District Court for the Southern District of California to a term of 48 months in prison based on her conviction for securities fraud and conspiracy. At all relevant times, she was housed at the Federal Satellite Prison Camp at Dublin, California ("SPC Dublin"). She was released from prison on June 20, 2014, and received a two-year term of supervised release.

On February 13, 2012, plaintiff was accepted into the Residential Drug Abuse Program ("RDAP") at SPC Dublin (Poole Decl. ¶ 19). The RDAP is a twelve-month, voluntary drug treatment program in which participants sign an agreement to abide by the rules of the program and may be granted early release under 18 U.S.C. 3621(e) if they complete all components of the program (*id.* ¶ 4). The first component of the RDAP is "unit-based" — meaning the participant lives in a specific treatment housing unit — and lasts approximately six months (*id.* ¶¶ 6-8). Plaintiff was expelled during this component of the program in July 2012 (*id.* ¶ 7; Compl. 3). According to plaintiff, she was expelled because she would not discuss or admit to her crimes, and defendants do not dispute this assertion (Jiau Decl. ¶ 5; Opp. 7; MSJ 6 n.2). Plaintiff claims that requiring her to discuss or admit her crimes violated her Fifth Amendment right not to incriminate herself.

The federal Bureau of Prisons provides a three-step administrative review process for inmates to seek remedies relating to any aspect of their imprisonment: (1) a complaint to staff at their institution (Form BP-9); (2) an appeal to the BOP Regional Director (Form BP-10); and (3) an appeal to the BOP Central Office (BP-11). *See* 28 C.F.R. §§ 542.10, 542.14(c)(4), 542.15(a).

Plaintiff sought administrative review of her expulsion from RDAP on two occasions without success (Syed Decl. ¶ 6). On July 18, 2012, plaintiff filed an administrative appeal to the Regional Director (*id.* ¶ 7, Exh. 2; Compl. 4, Exh. 1). Because she had skipped the first step of the administrative review process, the appeal was rejected on July 24, 2012 (*ibid.*). Plaintiff

2

was informed that she "must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level" (*ibid.*). According to plaintiff, she had been instructed by "Unit Team" on July 16, 2012, to bypass the institution step and file her administrative appeal directly with the Regional Director (Opp. 2; Pl. Decl. ¶ 6). Plaintiff's prison records indicate that she filed another administrative appeal to the Regional Director on Form BP-10 on July 25, 2012, the day after her first appeal was rejected, and that this second appeal was rejected for the same reason — because she did not first seek administrative review at her institution (Syed Decl. ¶ 8). Plaintiff asserts that after her initial appeal was rejected by the Regional Director, she sent an appeal to the BOP Central Office in November 2015, but she received no response (Opp. 2-3; Compl. 4). Prison records show that in her time in prison, plaintiff filed six other administrative grievances; they are not related to the claims raised here — three concerned disciplinary action and three concerned her placement in a residential re-entry center — and she pursued two of them through all three steps of the BOP administrative review process (Syed Decl. ¶¶ 10-14).

**ANALYSIS**

**I.  STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid*.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Ibid*. If the nonmoving party fails to produce enough evidence to show a

3

1  genuine issue of material fact, the moving party wins. *Ibid*.

2  Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied. *Ibid*. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id.* at 1172. Once the defendant has carried that burden, the prisoner has the burden of production. *Ibid*. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Ibid*. The ultimate burden of proof remains with the defendant. *Ibid*.

**II.  LEGAL ARGUMENTS**

1.  Failure to Exhaust

Defendants move for summary judgment because plaintiff did not exhaust her claims through all available BOP administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The PLRA's exhaustion requirement cannot be satisfied by filing a "procedurally defective administrative grievance or appeal." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006). "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Id.* at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. *Ibid.* Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). "Proper exhaustion demands compliance with an

4

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted).

Defendants must generally produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Ibid*. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Ibid*. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id.* at 1172. Once the defendant has carried that burden, the prisoner has the burden of production to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Ibid*. But the ultimate burden of proof remains with the defendant. *Ibid*.

Undisputed evidence, even when viewed in a light most favorable to plaintiff, shows that she failed to exhaust her available administrative remedies. It is undisputed that she never filed a complaint about her RDAP expulsion at the first step of BOP administrative review — to her institution on a Form BP-9. Instead, she went straight to the second step of review, to the Regional Director. Because BOP regulations require inmates to seek administrative review at the institutional level before appealing to the Regional Director, and plaintiff did not do so, plaintiff's administrative appeals of her expulsion from the RDAP were "procedurally defective" under the BOP regulations. Under *Ngo* and *Jones*, this means that she did not properly exhaust all of the available steps of administrative review on her RDAP claims. This is true even if it is assumed, as plaintiff asserts, that she later filed an administrative appeal at the third step, i.e. to the BOP Central Office on a Form BP-11.

Plaintiff argues that she did not pursue a remedy at the institutional level because she was told that she did not need to do so. An administrative remedy is not "available" within the

5

meaning of the PLRA if prison officials inform the prisoner that she cannot file a grievance. *See Williams v. Paramo,* 775 F.3d 1182, 1191-92 (9th Cir. 2015). However, plaintiff has not met her burden of production of showing that prison officials informed her that she could bypass the institutional level of administrative review. First, she does not identify the prison official or officials who gave her this information. She simply says she was told by the "Unit Team" without explaining that term or who was in that team. The team may have consisted of inmates, officials or a combination of the two. If the team was only officials, it is unclear whether she was told by an official in who was in a position that an inmate could reasonably rely on their representations about whether the institutional review should have been bypassed. Secondly, in her declaration she states that she was told on July 25, 2012, to bypass the first level of review, but she had filed the administrative appeal with the Regional Director (and skipped the first level of review) at least one week earlier, on July 18, 2012 (Pl. Decl. ¶ 6; Compl. Exh. 1).

In any event, defendants have proven non-exhaustion. Even if she was initially told by "Unit Team" that she could bypass the first level of review, when the Regional Director rejected the appeal, she was informed in no uncertain terms that she must file her complaint at the institutional level per BOP regulations before filing an appeal with the Regional Director. There is no dispute that she failed to do so. Her explanation — that she went on to the third level at the Central Office — even if true does not explain, let alone justify, not following the clear instructions to seek review at the institutional level as required by the BOP regulations. In addition, it is not disputed that plaintiff was aware of the first level of review because on at least two other occasions — when seeking administrative review of unrelated issues — she had properly filed complaints at that level before proceeding to the Regional Director. Plaintiff has not created any genuine issue of material fact as to whether or not her obligation to properly exhaust her administrative remedies included seeking review at the institutional level.

Accordingly, defendants are entitled to summary judgment on the grounds that plaintiff failed to exhaust her RDAP claims prior to filing this lawsuit. Even if summary judgment was not proper on exhaustion grounds, moreover, it is warranted on the merits of plaintiff's claims,

6

for the reasons discussed below.

2. <u>Merits</u>

Plaintiff claims that her expulsion from the RDAP because she refused to discuss or admit to her crimes violated her Fifth Amendment right not to incriminate herself. In order to make a valid Fifth Amendment claim, plaintiff must show: (1) that the testimony desired by the government carried the risk of incarceration, and (2) that the penalty suffered amounted to compulsion. *United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005).

There is no evidence of compulsion in this case. In *Antelope*, there was compulsion because the defendant "was sentenced to a longer prison term for refusing" to disclose past sex offenses. *Id.* at 1137-38 (holding that probationer was compelled where his failure to agree, as part of his probation, to a counseling program in which he would reveal his sex history, extended his incarceration period) (citing *McKune v. Lile*, 536 U.S. 24, 48-52 (2002) (O'Connor, J., concurring)). It is undisputed that the RDAP program is entirely voluntary (Poole Decl. ¶ 4). If plaintiff did not want to discuss or admit to her crimes, she could simply leave the RDAP and the penalty for doing so would not expose her to a longer sentence, as in *Antelope*, but at most expose her to the sentence originally imposed. In fact, leaving the RDAP did not deprive her of early release but rather the *possibility* of early release: as the United States Court of Appeals found in the remand order, the applicable statute provides "that successful completion of RDAP does not necessarily result in a reduced sentence, but rather that the [BOP] retains discretion over whether to grant a sentence reduction to a prisoner who completes the program." *Jiau* v. *Poole*, Nos. 13-15378, 13-15379, slip op. 3-4 (9th Cir. Jan. 15. 2015) (citing 18 U.S.C. § 3621(e)(2)(B)). Thus, her "penalty" for not discussing her crimes and her expulsion from the RDAP was not a longer sentence, but rather the loss of a chance at an earlier release from the sentence imposed. This is not a sufficiently severe penalty to consider her testimony "compelled" under the Fifth Amendment. *Cf. Antelope*, 395 F.3d at 1135-36 (revocation of probation, being denied clemency, and being transferred to a higher security prison are examples of penalties for remaining silent which are not severe enough to render the testimony compelled) (citing cases). Also, there is no dispute that she did not even suffer

7

1 harsher her conditions of confinement when she left the RDAP.

2 There is also no evidence that plaintiff's discussion of her crimes carried the risk of
3 incrimination. In *Antelope*, there was a sufficient risk of incrimination because the defendant
4 would be required to discuss past sex crimes with counselors, not simply the crime he was
5 convicted of, and the counselors would be required to report these additional crimes to law
6 enforcement officials for prosecution. *Id.* at 1135. Here, plaintiff was only required to discuss
7 the crimes of which she had already been convicted. She therefore would not be required to
8 incriminate herself on additional crimes, as in *Antelope*.

9 There is no triable issue as to whether either prong of the test for a Fifth Amendment
10 violation has been met here. Consequently, defendants are entitled to summary judgment on
11 plaintiff's Fifth Amendment claims.

12 Plaintiff makes additional claims that are largely or entirely unexplained. She claims
13 that her constitutional rights generally and her right of access of courts were violated by the
14 decision to expel her from the RDAP (Compl. 3; Opp. 6). There is no due process or other
15 constitutional right to participate in the RDAP or to stay in it once an inmate has started it. *See*
16 *Reeb v. Thomas*, 636 F.3d 1224, 1228 n.4 (9th Cir. 2011). How her access to the courts might
17 have been impeded by being expelled from the RDAP is neither explained nor apparent in the
18 pleadings or summary judgment papers. In her complaint, she alleges that her access to the
19 courts was impeded by prison officials interfering with her mail (Compl. 3). This alleged
20 interference consisted of her failure to receive mail from her attorney and from the Southern
21 District of New York between September 2012 and January 2013 (Compl. Exh. 2). Such a
22 claim is not exhausted in that administrative grievances she filed do not concern mail
23 interference or tampering (Syed Decl. ¶¶ 10-14; Compl. Exh. 1).

24 Plaintiff also claims a violation of her right to due process and retaliation (Opp. 6;
25 Compl. 3). There is no explanation as to how her right to due process might have been violated.
26 As for retaliation, in her complaint she merely alleges that "there are on-going retaliatory acts
27 and threats made by prison staff" without identifying what those acts were (*id.* 3). In
28 attachments she alleges RDAP personnel harassed and humiliated her about the severity of her

crimes, but to the extent these are meant to form part of her retaliation claim they are not actionable because retaliation is only actionable if the retaliation is for the exercise of her constitutional rights, *see Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005), not for the commission of federal crimes. Further, the only acts she identifies as retaliatory in her papers are that her "RRC placement review was seriously delayed," and that defendant Warden Tews "denied my request," and she states that these actions were done in retaliation for filing "the lawsuits" (Pl. Decl. ¶ 8). There is no evidence that this constituted actionable retaliation. There is no evidence as to when the RRC placement review was delayed or Warden Tews denied her unspecified request, nor is there any evidence as to what lawsuits triggered this alleged retaliation. In addition, plaintiff has no evidence that the reasons for defendants' actions were plaintiff's lawsuits, as opposed to administrative, penological or other considerations. *See ibid.* (retaliation claim requires showing retaliatory acts were because of plaintiff's exercise of their constitutional rights); *see also Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (plaintiff must show a nexus between adverse activity and protected speech). In the absence of such evidence, her assertions of retaliation are merely conclusory and not sufficient to avoid summary judgment.

## CONCLUSION

In light of the foregoing, defendants' motion for summary judgment is **GRANTED**. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: January  6  , 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9